# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| MARIANNE M. ANDES ESTATE, ET AL., | )<br>)<br>) Case No. 1:19CV00005 |
| Plaintiffs, | )<br>) **OPINION AND ORDER** |
| v. | )<br>) By: James P. Jones<br>) United States District Judge |
| UNITED STATES OF AMERICA, | )<br>) |
| Defendant. | ) |

*Roy L. Andes, Pro Se Plaintiff; Sara Bugbee Winn, Assistant United States Attorney, Roanoke, Virginia, for United States.*

In this civil action under the Federal Tort Claims Act, a pro se plaintiff alleges that a doctor and two technologists employed by the U.S. Department of Veterans Affairs ("VA") committed medical malpractice while treating his wife at VA facilities in Virginia and Tennessee. The government has moved to dismiss the Complaint because the plaintiff failed to file a certificate of good faith, as required by Tennessee law governing medical malpractice claims. For the reasons that follow, I will partially grant the Motion to Dismiss and dismiss the claim regarding alleged malpractice in Tennessee. However, the claim regarding alleged malpractice in Virginia will not be dismissed.

I.

The Complaint alleges the following facts, which I must accept as true for the purpose of deciding the Motion to Dismiss.[1]

On June 10, 2016, Marianne M. Andes had an appointment with Dr. Lillian Burke at the VA's Community Based Outpatient Clinic ("CBOC") in Bristol, Virginia. Roy L. Andes, Mrs. Andes' husband and a plaintiff in this case, also attended the appointment, which was Mrs. Andes' first with Dr. Burke. During the appointment, Dr. Burke reviewed Mrs. Andes' general health issues, which included high blood pressure, diabetes, and stage four kidney disease.

On July 8, 2016, Mrs. Andes had a second appointment with Dr. Burke at the Bristol CBOC, which Mr. Andes also attended. At the start of the appointment, Dr. Burke stated that she wanted to order an MRI scan for Mrs. Andes. Mr. Andes asked Dr. Burke whether the MRI scan would be with or without contrast dye, and Dr. Burke responded that it would be done both with and without the dye. Mr. and Mrs. Andes both informed Dr. Burke that Mrs. Andes could not have the scan with contrast dye because of her age and health issues, particularly her kidney disease. However, Dr. Burke stated that using contrast dye would not pose any risk. Mr.

---

[1] I have considered the facts set out in both the Complaint and its attachments. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) ("In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint.").

Andes asked Mrs. Andes about undergoing the MRI scan without contrast dye, to which Mrs. Andes agreed. Mr. Andes then told Dr. Burke that they would proceed with the scan, but without contrast dye. Dr. Burke did not respond verbally, but to Mr. Andes, she seemed to agree.

On July 13, 2016, Mr. Andes received a letter from Dr. Burke with results from lab work done for Mrs. Andes on July 8. In the letter, Dr. Burke stated that Mrs. Andes should see a kidney specialist and that she had arranged for Mrs. Andes to have an ultrasound of her kidneys. Mr. Andes alleges that Dr. Burke was aware of Mrs. Andes' stage four kidney disease at the time of the lab results and letter.

Mrs. and Mr. Andes went to the James H. Quillen Veterans Affairs Medical Center ("the VAMC"), located in Johnson City, Tennessee, on August 22, 2016, for Mrs. Andes' MRI scan. During the procedure, an MRI technologist, Kristi Street, approached Mr. Andes in the waiting room and told him that Dr. Chris Payne wanted to speak with him. Dr. Payne told Mr. Andes, "[W]e have made a terrible mistake — We have put something in your wife's body that will stay there for the rest of her life." Compl. 6, ECF No. 2. Mr. Andes asked how this had happened, and Dr. Payne told him that they had not been able to find Mrs. Andes' records. Dr. Payne told them that the contrast dye would bind to Mrs. Andes' organs and cells in a short amount of time but that after two years, her risk of

developing nephrogenic systemic fibrosis would be slight, and VA would pay for her to see a dermatologist and nephrologist for two years.

Shortly after the MRI scan, Mr. and Mrs. Andes received a letter showing that the scan had been done with and without contrast dye, and the contrast media was gadolinium. Dr. Burke also called Mrs. Andes and stated, among other things, "I probably should not have ordered the contrast, but I didn't know the VA's protocol." Compl. Attach. 3, at 4, ECF No. 2-3.

Within two weeks of the MRI scan, Mrs. Andes began having pain in her head and body, her skin turned red and was itchy and burning, and her body began to take on fluids and swell. Mr. Andes took her to the emergency room at the VAMC on September 6, 2016, but they did not have a room for her, and Mr. and Mrs. Andes went home that day. On September 8, they returned for an appointment with Dr. David Joseph, a nephrologist.[2] During the appointment, Mrs. Andes had a possible heart attack. Dr. Joseph admitted her, and between September 8 and September 14, doctors at the VAMC treated her for fluid retention, removing 40 to 50 pounds of excess fluid. She also developed congestive heart failure during this time. Mrs. Andes returned home with Mr.

---

[2] The Complaint states that these visits occurred in October; however, the attachments to the Complaint and other facts in it suggest that they occurred in September.

Andes on or around September 14, and from that time, Mr. Andes worked with Dr. Joseph to manage her symptoms and medications.

On October 25, 2016, Mr. Andes requested copies of all of Mrs. Andes' medical records. Among these records, Mr. Andes received a copy of a work order that Dr. Burke had entered on July 8, after the appointment with Mrs. Andes. The work order requested an MRI scan with and without contrast dye. The records also included a MRI screening questionnaire that Mrs. Andes had completed on the day of the MRI scan. On the questionnaire, Mrs. Andes had indicated that she had kidney disease and allergies to contrast media. Kristi Street, the MRI technologist working with Mrs. Andes, had signed the form, attesting that she had reviewed it with Mrs. Andes.

By March of 2017, Mrs. Andes' health was deteriorating rapidly. She was admitted to a local hospital on March 20, and on March 22, doctors advised Mr. Andes that they could not do anything more for her. Mrs. Andes passed away on March 23, 2017.

Mr. Andes, proceeding pro se as the spouse and personal representative of the Estate of Marianne M. Andes, filed the present Complaint against the United States under the Federal Tort Claims Act ("FTCA"). He alleges that Dr. Burke was negligent in ordering the MRI scan with contrast dye in light of her knowledge of Mrs. Andes' kidney disease, and that MRI technologists Krista Street and Kayla

Rosenbaum were negligent in conducting the procedure with contrast dye in light of Mrs. Andes' responses to the MRI screening questionnaire and without obtaining Mrs. Andes' informed consent to administering the contrast dye. Mr. Andes also alleges that Dr. Burke and registered nurse Beverly Chulik created false medical records to minimize or cover up their conduct. The United States has moved to dismiss the Complaint, arguing that Mr. Andes has not satisfied the requirements for medical malpractice actions under Tennessee law. The Motion to Dismiss is ripe for decision.[3]

## II.

Federal courts do not have jurisdiction over actions against the United States unless Congress has expressly waived the United States' sovereign immunity. *See United States v. Sherwood*, 312 U.S. 584, 586–87 (1941). The FTCA waives the United States' sovereign immunity and makes the government liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The government's liability is to be determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Thus, "[t]he statute permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the

---

[3] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

place where the act occurred." *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001).

Mr. Andes has alleged negligent acts by Dr. Burke, which occurred in Virginia, and by technologists Street and Rosenbaum, which occurred in Tennessee. In its Motion to Dismiss, the government addresses only the alleged acts that occurred in Tennessee. However, I will consider both in evaluating the Complaint.

Federal pleading standards require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss, the complaint must "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon its "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In evaluating a pleading, the court accepts as true all well-pled facts and construes those facts in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). A complaint does not need detailed factual allegations to survive a motion to dismiss; however, it must have more than labels and conclusions or a recitation of the elements of the cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

A.

As the government asserts, Tennessee law governs the claim regarding Street and Rosenbaum's alleged actions performing Mrs. Atkins' MRI scan at the VAMC, located in Tennessee  In Tennessee, civil actions alleging that a health care provider caused an injury while providing or failing to provide health care services are governed by the Tennessee Health Care Liability Act ("THCLA"). *See* T.C.A. §§ 29-26-101, 29-26-115.  Under the THCLA, to prevail on such a claim, plaintiffs must prove:

> (1)   The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
>
> (2)   That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
>
> (3)   As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

T.C.A. § 29-26-115(a).

In addition, in any medical malpractice action in which expert testimony is required, plaintiffs must file a certificate of good faith with their complaint.[4]

---

[4]  This certificate of good faith must state that the plaintiff has consulted with one or more experts who have provided a signed written statement confirming that they are competent to express an opinion in the case and that they believe there is a good faith basis to maintain the action.  T.C.A. § 29-26-122(a).

T.C.A. § 29-26-122. "In health care liability actions, such as this one, expert proof is required to establish the recognized standard of acceptable professional practice in the profession, unless the claim falls within the 'common knowledge' exception . . . ." *Ellithorpe v. Weismark*, 479 S.W.3d 818, 829 (Tenn. 2015). The common knowledge exception typically applies in cases of "unusual injuries such as a sponge or needle being left in the patient's abdomen following surgery or where the patient's eye is cut during the performance of an appendectomy." *Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 92 (Tenn. 1999).

If a certificate of good faith is required and is not filed with the complaint, the complaint must be dismissed, unless the failure was because the health care provider did not timely provide copies of the plaintiff's records, or other extraordinary cause. T.C.A. § 29-26-122(a). A plaintiff's pro se status does not constitute extraordinary cause, as "the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Brandon v. Williamson Med. Ctr.*, 343 S.W.3d 784, 790 (Tenn. Ct. App. 2010) (internal quotation marks and citation omitted) (finding that the plaintiff's pro se status did not excuse her failure to timely file a certificate of good faith). Dismissal for failure to file a certificate of good faith must be with prejudice. T.C.A. § 29-26-122(c); *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 311–12 (Tenn. 2012).

I find that Mr. Andes' claim regarding Street and Rosenbaum's alleged actions before and during Mrs. Atkins's MRI scan do not fall within the common knowledge exception to the general requirement of expert proof in health care liability actions. Street and Rosenbaum's actions in response to the information in Mrs. Andes' MRI screening questionnaire and before the MRI scan in general are not so commonly known to be negligent as is a sponge or needle being left in a patient following surgery. Thus, expert proof is required in this case, and under the THCLA, Mr. Andes must have filed a certificate of good faith with his Complaint. Mr. Andes has not filed a certificate of good faith, nor has he shown that his failure to do so was because of delay by the health care provider or any other extraordinary cause. Accordingly, I must dismiss the claim arising out of Street and Rosenbaum's actions at VAMC with prejudice.

In doing so, I echo the court in *Litton v. Wellmont Health Systems* and recognize that dismissal with prejudice for failure to file a certificate of good faith is a harsh result. No. 2:11-CV-257, 2012 WL 4372375, at *4 (E.D. Tenn. Sept. 24, 2012). However, I must follow the law of Tennessee in this case.

B.

As for the claim regarding Dr. Burke's alleged conduct at the Bristol CBOC, Virginia law applies. In Virginia, any tort action for personal injuries or wrongful death based on health care services rendered, or which should have been rendered,

by a health care provider to a patient is governed by the Virginia Medical Malpractice Act ("VMMA"). Va. Code Ann. § 8.01-581.1. "Under the VMMA, every complaint that asserts a medical malpractice claim 'shall be deemed a certification that the plaintiff has obtained from an expert . . . a written opinion signed by an expert witness.'" *Sowers v. United States*, 141 F. Supp. 3d 471, 477 (E.D. Va. 2015) (quoting Va. Code Ann. § 8.01-20.1). "Specifically, the complaint certifies that the expert opinion states that 'based upon a reasonable understanding of the facts, the defendant . . . deviated from the applicable standard of care and the deviation was a proximate cause of the injuries claimed.'" *Id.* (quoting Va. Code Ann. § 8.01-20.1).

The plaintiff need not file any certification with the complaint; rather, upon written request by a defendant and within ten days of the request, the plaintiff must provide the defendant with a certification form that affirms that the plaintiff had obtained the expert opinion when service was requested. Va. Code Ann. § 8.01-20.1. If the plaintiff did not obtain a necessary certifying expert opinion at the time the plaintiff requested service of process, the court shall impose sanctions and may dismiss the case with prejudice. *Id.*

Here, the government's Motion to Dismiss does not address Mr. Andes' allegations regarding Dr. Burke's conduct in Virginia, and there is no evidence that

it has requested a certification form from Mr. Andes or that he has failed to provide one. Accordingly, it is not appropriate to dismiss the claim regarding Dr. Burke.

C.

With respect to Mr. Andes' claim that Dr. Burke and Chulik falsified portions of his wife's medical records, this claim falls under an exception to the FTCA's waiver of the government's sovereign immunity, and thus the court does not have jurisdiction over it. *See Huff v. U. S. Dept. of Army*, 508 F. Supp. 2d 459, 465 (D. Md. 2007) (finding that the court lacked jurisdiction under the FTCA over the plaintiff's claim that his military records had been tampered with). The jurisdictional grant provided by the FTCA does not extend to claims arising out of misrepresentation or deceit. 28 U.S.C. § 2680(h). Accordingly, I must dismiss this claim.

D.

As a final matter, I note that Mr. Andes has brought the present Complaint in the name of the Estate of Marianne M. Andes and in his own name, as the spouse and personal representative of the Estate of Marianne M. Andes. On behalf of the estate as its personal representative, he seeks monetary damages for Mrs. Andes' mental and physical pain and suffering, emotional distress, and loss of enjoyment of life. On behalf of himself as her spouse, he seeks monetary damages for his

own physical and mental pain and suffering, emotional distress, services rendered in caring for Mrs. Andes, loss of enjoyment of life, and loss of consortium.

Under Virginia law, a decedent's personal representative may bring an action on behalf of the decedent's beneficiaries to recover damages caused by the wrongful act or neglect of another. Va. Code Ann. § 8.01-50. Such an action must be brought by and in the name of the personal representative. *Id.* However, the personal representative may not file the action without a lawyer if there are other beneficiaries or creditors of the estate. *Kone v. Wilson*, 630 S.E.2d 744, 746 (Va. 2006) (holding that a personal representative could not proceed pro se because the personal representative's right to bring a wrongful death action existed only to permit him to prosecute the cause of action belonging to the decedent's beneficiaries, and not to maintain any cause of action personal to him); *see also Witherspoon v. Jeffords Agency, Inc.*, 88 F. App'x 659, 659 (4th Cir. 2004) (unpublished) (remanding to the district court a pro se personal representative's appeal of the district court's dismissal of the case to determine whether the personal representative was a beneficiary of the estate and whether there were other beneficiaries and creditors involved). Accordingly, for Mr. Andes to proceed without a lawyer as the personal representative of Mrs. Andes' estate, Mr. Andes must be the sole beneficiary of the estate, and there must not be any creditors of the estate.

In addition, in an action under Virginia law seeking to recover for the wrongful death of a married woman, no action for such injury, expenses, or loss of services or consortium can be maintained by the husband. Va. Code Ann. § 55-36. Accordingly, Mr. Andes may not maintain an individual action as the spouse of Mrs. Andes for expenses or loss of consortium stemming from her death, and I will dismiss such individual claim.

Moreover, I find that he has not alleged facts sufficient to state a claim for negligent infliction of emotional distress relating to Mrs. Andes' death. *See Delk v. Columbia/HCA Healthcare Corp.*, 523 S.E.2d 826, 834 (Va. 2000) (stating that there can be no recovery for emotional distress alone and holding that the plaintiff's allegation that "she incurred 'severe mental, emotional and physical trauma' is not sufficient to support a cause of action for negligent infliction of emotional distress"). Thus, I must also dismiss Mr. Andes' individual claim for his own physical and mental suffering and emotional distress.

### III.

For the foregoing reasons, it is **ORDERED** as follows:

1. The Motion to Dismiss, ECF No. 8, is GRANTED IN PART AND DENIED IN PART;

2. The claim regarding Street and Rosenbaum's conduct in Tennessee is DISMISSED with prejudice;

3. The claim alleging that Dr. Burke and nurse Chulik falsified portions of Mrs. Andes' medical records is DISMISSED with prejudice;

4. Mr. Andes' individual claim seeking recovery for his physical and mental suffering, emotional distress, expenses, and loss of consortium is DISMISSED with prejudice;

5. The claim regarding Dr. Burke's conduct in Virginia is not dismissed and remains;

6. Within 30 days of the date of this Opinion and Order, Mr. Andes must file with the court a document showing his appointment by a state court as administrator or executor of Mrs. Andes' estate, and a written statement by him of whether he is the sole beneficiary of the estate and whether to the best of his knowledge there are any creditors of the estate; and

7. If Mr. Andes is not the sole beneficiary of the estate or if there are any creditors of the estate, Mr. Andes must obtain a lawyer to represent him in this case. I strongly urge Mr. Andes to obtain an attorney in any event. Under the law, the court cannot give legal advice to a litigant. Without knowledge of the legal rules necessary to prove his case, or of the procedures required in court, Mr. Andes will be at a severe disadvantage.

    ENTER: August 5, 2019

    /s/ *James P. Jones*
    United States District Judge