IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| ROY L. ANDES, ADMINISTRATOR OF THE ESTATE OF MARIANNE McKAY ANDES, DECEASED, ) ) ) ) | |
| Plaintiff, ) ) | Case No. 1:19CV00005 |
| v. ) ) | **OPINION** |
| UNITED STATES OF AMERICA, ) ) | JUDGE JAMES P. JONES |
| Defendant. ) | |

*Mark T. Hurt, THE OFFICES OF MARK T. HURT, Abingdon, Virginia, for Plaintiff; Sara Bugbee Winn, Assistant United States Attorney, Roanoke, Virginia, for Defendant.*

On March 11, 2022, the court held a hearing to address the parties' petition to approve a settlement of this Federal Tort Claims Act action pursuant to Virginia's wrongful death statute, Virginia Code § 8.01-55. The court also heard evidence from five statutory beneficiaries as to their damages under Virginia Code § 8.01-52. At the conclusion of the hearing, I determined that the total settlement amount, including the attorney's fees and costs, were fair and just. I must now determine how to distribute and apportion the proceeds of the settlement funds among the statutory beneficiaries. For the following reasons, I find each of the statutory beneficiaries is entitled to an equal allocation of the net distributable funds, that is,

the settlement funds remaining after accounting for attorney's fees, costs, and funeral expenses.

I.

Marianne McKay Andes ("Mrs. Andes") passed away on March 23, 2017. She was survived by her husband, Roy Andes ("Mr. Andes"), and four adult children, a daughter from a previous relationship, Michelle Roche ("Michelle"), and three sons Mrs. Andes had with Mr. Andes, Michael Andes ("Michael"), Mark Andes ("Mark"), and Matthew Andes ("Matthew") (collectively "Andes Children").

On February 4, 2019, Mr. Andes, proceeding pro se both individually and as personal representative of Mrs. Andes' estate ("Estate"), brought claims against the United States pursuant to the Federal Tort Claims Act. On August 5, 2019, this court dismissed the claims Mr. Andes brought individually and ordered him to (1) file documents showing his appointment as the administrator of the Estate and (2) to obtain a lawyer if he was not the sole beneficiary of the Estate or if there were any creditors of the Estate. Mr. Andes complied with the court's order.

On March 10, 2022, the parties filed a joint petition and requested that the court approve a settlement in the amount of $220,000.00, with $55,000.00 to go to attorney's fees and $12,066.33 to account for costs advanced by the Estate's attorney. At the hearing, Mr. Andes, as well each of the Andes Children, agreed that the settlement amount was reasonable. However, Mr. Andes and the Andes Children

do not agree on the allocation. Specifically, Mr. Andes contends he is entitled to seventy-five percent of the proceeds. Three of the Andes Children asserted that the distributable funds should be allocated equally and one of the children contended that Mr. Andes should receive a lesser amount because of his conduct after Mrs. Andes' death.[1]

II.

Virginia law provides that damages in a wrongful death case are to be awarded to the surviving spouse, the children of the deceased, and the parents of the deceased under certain circumstances. If the parties in interest do not agree on the distribution of wrongful death settlement funds, "the court shall direct such distribution as a jury might direct under § 8.01-52 as to damages awarded by them." Va. Code Ann. § 8.01-55. Damages for sorrow, mental anguish, and solace; compensation for reasonably expected loss of income, services, and assistance; expenses for the treatment of the decedent incident to the injury resulting in death; reasonable funeral expenses; and in certain circumstances, punitive damages, are recoverable. *Id.* § 8.01-52.

---

[1] Mr. Andes failed to list Michael, Mark, and Matthew as his wife's heirs on documents initially filed in state court when he sought letters testamentary. The Andes Children also allege Mr. Andes wrongfully sold family heirlooms belonging to their mother. This fact and allegation are irrelevant to the issue at hand.

Both the reasonableness of a wrongful death settlement and the apportionment of settlement funds were issues before the court in *Hewitt v. Firestone Tire & Rubber Co.*, 490 F. Supp. 1358 (E.D. Va. 1980).  The *Hewitt* court recognized the general Virginia rule that courts and juries enjoy discretion in ascertaining the amount of recovery.  *Id.* at 1366.  As for the allocation of such recovery, the court stated, "Damages, after costs and reasonable attorney's fees are allocated, should be awarded individually and separately to the statutory beneficiaries according to their respective losses."  *Id.* at 1366–67.

The *Hewitt* court allocated seventy-five percent of the distributable settlement proceeds to the surviving spouse, eleven percent to the decedent's minor children with his surviving spouse, and three percent to the decedent's children from a prior marriage.  *Id.* at 1367.  The court allocated only three percent of the funds to the decedent's children from a prior marriage because the evidence showed the children had received no financial or emotional support from the decedent.  *Id*.  The children only saw the decedent once during an eight-year period before the decedent's death.  *Id*.  Accordingly, the court found that "[a]ny emotional loss the children may have comprehended was fleeting and shallow."  *Id.*

The court reasoned that the decedent's surviving spouse was entitled to most of the distributable funds in part because of the sorrow she felt as a devoted wife and because the other minor children, ages six and seven, were "blessed with an ability

to live with and overcome sorrow." *Id.* The court also considered the fact that the decedent had provided income for his spouse, and the surviving spouse only worked part time. *Id.* at 1361, 1367. All in all, the *Hewitt* case does not mandate that spouses are always entitled to the largest allocation of wrongful death funds, but rather, it illustrates the rule that a court should allocate such funds based on the evidence before it.

In *Meeks ex rel. Anderson v. Emiabata*, No. 7:14-cv-00534, 2015 WL 6760491 (W.D. Va. Nov. 5, 2015), the court was tasked with determining how to distribute Virginia wrongful death settlement proceeds among four statutory beneficiaries, the decedent's two siblings and the decedent's aunt and uncle. *Id*. at *1. The court awarded each of the siblings $5,000 after determining that the siblings did not have a close relationship with the decedent. *Id*. at *3 (noting that the court had difficulty arriving at an appropriate measure for the "very minor damages" the siblings experienced). The court allocated the decedent's aunt and uncle $93,814.27 each. *Id*. at *4. The court reasoned that the damages shown by the decedent's aunt and uncle were "significant." *Id.* The decedent had had a close relationship with his aunt and uncle. *Id*. at *3. He had called them every day when he was on the road as a truck driver. *Id*. When he was home, "he was a great source of companionship and help." The aunt and uncle experienced great sorrow, lost the decedent's companionship, and lost the services, care, and assistance the decedent had provided

on the aunt and uncle's farm. *Id*. at *3, *4. The *Meeks* opinion highlights how evidence of grief, sorrow, and the relationship each beneficiary had with a wrongful death decedent is significant when a court or jury determines beneficiaries' respective losses. *Id*. at *4; *see Skinner v. United States*, No. 1:19-cv-468, 2020 WL 5414345, at *6, *7 (E.D. Va. Sept. 9, 2020) (allocating wrongful settlement proceeds among three beneficiaries, finding that the record did not support equal distribution, and basing the allocations on how close each beneficiary was to the decedent and whether each beneficiary provided end-of-life care to the decedent); *Sawyer v. United States*, 465 F. Supp. 282, 292 (E.D. Va. 1978) (noting that damages for loss of comfort, guidance, and society, as well as mental anguish are incalculable and finders of fact are permitted to make reasonable approximations based on judgment and practical experience).

  Furthermore, another federal court once opined:

> Even though the minor son had certain rights of possible participation under the death statute, it remained within the discretion of the jury, or the court hearing the case without a jury, to direct in what proportion the damages should be distributed to the surviving widow and/or child, and it is clear from the statute that beneficiaries within the designated class may receive the whole or any part of the recovery.

*Holley v. The Manfred Stansfield*, 186 F. supp. 805, 808 (E.D. Va. 1960) (citing an earlier version of the Virginia wrongful death statute).

  Virginia state court case law is also instructive. In *Matthews v. Hicks*, Virginia's highest court stated, "Between members of the same class [of

beneficiaries] the jury has absolute discretion as to who shall receive the whole or any part of the recovery . . . ." 87 S.E.2d 629, 634 (Va. 1955), (citing the earlier version of the wrongful death statute). One Virginia circuit court cited the *Matthews* language in refusing to overturn a jury's decision to allocate half of a damage award to one of three statutory beneficiaries. *Simmons v. MTD Prods., Inc.*, No. CL04001142, 2008 WL 6744128, at *3 (Va. Cir. Ct. Feb. 29, 2008). The court concluded, "[I]n allocating among members of the same class, the jury's discretion is 'absolute.' I cannot say that the jury's allocation of damages among [the decedent's] statutory beneficiaries of the same class furnishes any basis to question or set aside the verdict." *Id.* at *4. It follows that the court's statutory authority to direct a settlement distribution as a jury may direct similarly invokes this discretion under Virginia's wrongful death statute.

Another Virginia circuit court allocated an equal amount of settlement funds to each of a decedent's three surviving natural children, while awarding the decedent's widow a much lesser amount. The court determined that the three children each had close relationships with the decedent, frequently called to check on him, and made trips to see him, while the widow did not care for the decedent or make an effort to visit or talk with him. *Brooks v. Hannan*, No. 98-64, 2000 WL 33340711, at *1–2, *4 (Va. Cir. Ct. Nov. 22, 2000). Again, the court emphasized that each amount "represent[ed] fair and just compensation for the losses suffered

by each of the statutory beneficiaries." *Id.* at *4; *cf. Marshall v. Goughnour*, 269 S.E.2d 801, 806 (Va. 1980) (construing the "damage provision of the [wrongful death] statute to require proof of loss by the statutory beneficiary or beneficiaries"); *Cassady v. Martin*, 266 S.E.2d 104, 108 (Va. 1980) ("The object of the statute is to compensate these beneficiaries for their loss occasioned by the decedent's death.") (internal quotation marks and citation omitted).

### III.

Here, the evidence presented at the hearing shows that all five of Mrs. Andes' statutory beneficiaries have suffered significant sorrow, mental anguish, and solace because of Ms. Andes' death. The Andes Children regularly spoke with Ms. Andes, assisted with her end-of-life care, and have lost companionship. While Mr. Andes testified that he lost Mrs. Andes' social security benefits, the evidence shows Mrs. Andes received only $5,868.00 in 2016, an amount that would not cover Mrs. Andes' own expenses for a year. The evidence also shows that both Mr. Andes and her son Michael paid for funeral or cremation expenses. Specifically, Mr. Andes paid $1,400.00 and Michael paid $1,038.11.

Accordingly, the court finds that after accounting for the $55,000.00 in fees and $12,066.33 in costs to be paid to the Estate's attorney, the $1,400.00 to be paid to Mr. Andes to cover his portion of the funeral or cremation expenses, and the $1,038.11 to be paid to Michael to cover his portion of the funeral or cremation

expenses, each of Ms. Andes' five statutory beneficiaries suffered equal damages, and the remaining total distributable settlement funds, $150,495.56, is to be divided and allocated equally.

    A separate Order will be entered herewith.

DATED:   March 30, 2022

/s/  JAMES P. JONES
Senior United States District Judge